UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BECKER METAL WORKS, INC.,

        Plaintiff,

v.

GENWORTH LIFE AND ANNUITY
INSURANCE COMPANY,

        Defendant.
_____/

No. 23-11264

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [9]**

Plaintiff Becker Metal Works, Inc., brings a three-count complaint against Defendant Genworth Life and Annuity Insurance Company in this Court based on diversity jurisdiction. The matter is now before the Court on Defendant's motion to dismiss. (ECF No. 9.) The motion has been fully briefed. (ECF Nos. 9, 10, 12, and 13.) Pursuant to the Eastern District of Michigan Local Rule 7.1(f)(2), this motion will be decided on the briefs and without oral argument. For the reasons set forth below, the Court GRANTS Defendant's motion.

**I.    Background**

On May 7, 1987, Plaintiff purchased a life insurance policy for Rudolf Becker. (ECF No. 1, PageID.3.) Defendant regularly sent quarterly invoices to Plaintiff. (*Id.*) Plaintiff made regular payments for 35 years. (*Id.*) However, in its Complaint, Plaintiff claimed that mail delivery became irregular during the COVID-19 pandemic. (*Id.*) As a result, Defendant's quarterly invoices arrived late, or in some instances did not arrive at all. (*Id.*) Of the notices Defendant claims it sent Plaintiff in 2022, Defendant received only one, a "reminder notice" (or, "the notice") dated April 13, 2022. (ECF No. 12, PageID.130.)

Plaintiff claims that during the time the policy was in effect, each reminder notice for the second quarter of the year contained a new premium amount, and that new amount would apply until a reminder notice with a new amount was sent. (ECF No. 12, PageID.131). When no reminder notices arrived by April 2022, Plaintiff sent a payment covering the first quarter of 2022 to Defendant in the same amount it had paid since the second quarter of 2021—$3,362.96. (*Id.*)

Plaintiff provides differing accounts for when it finally received the second quarter notice. In its Complaint, Plaintiff claims the last "invoice" from Defendant arrived in May 2022, approximately one and a half months late. (ECF No. 1, PageID.3.) However, in its response to Defendant's motion to dismiss, Plaintiff claims it did not receive the April 13, 2022 "reminder notice" until "after the July 4, 2022[,] holiday."[1] (ECF No. 12, PageID.131; ECF No. 12-3, PageID.167.) Plaintiff then wrote a check dated July 5, 2022, for the amount reflected in the notice, $3,727.57, and sent that check along with the notice via FedEx on July 11. (ECF No.10-3, PageID.109, 115.) The payment did not arrive until July 12, 2022. (ECF No. 10-3, PageID.109.)

The notice included the following information: the payment due date of May 7, 2022, the amount owed, $3727.57, and that failure to pay could result in the termination of the policy. (ECF No.10-2; PageID.106.) Specifically, the notice stated "[y]our policy can lapse if you do not pay enough premium to keep your policy's values large enough to maintain coverage. The more premium you pay, the less likely your policy will lapse." (*Id.*)

---

[1] While Plaintiff describes this notice as an "invoice" in its Complaint (ECF No. 1, PageID.3), and as a "reminder notice" in its response to defendant's motion to dismiss (ECF No. 12, PageID.136), it appears both the "invoice" and the "reminder notice" are referring to the same April 13, 2022, document from Defendant.

Defendant provided a 61-day grace period after the due date listed on the notice for Plaintiff to make the second quarter payment. (ECF No. 10-5, PageID.120; ECF No. 10-6, PageID.122.) However, after not receiving any payment for the second quarter of 2022 within the 61-day grace period, Defendant terminated the policy. (ECF No. 10-5, PageID.120; ECF No. 10-6, PageID.122.) Plaintiff eventually realized that the policy was terminated. His counsel communicated with Defendant regarding the possibility of reinstating the policy, but no further action had been taken when Rudolf Becker died on April 30, 2023. Plaintiff now brings breach of contract, unfair/trade practices/bad faith refusal to pay benefits, and breach of contract implied in law claims due to Defendant's failure to pay benefits pursuant to the policy.

## II. Legal Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. "[A] complaint only survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Barney v. PNC Bank*, 714 F.3d 920, 924 (6th Cir. 2013) (internal quotations and citations omitted). "A claim is plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

To survive a Rule 12(b)(6) motion, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hat a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

## III. Analysis

### A. Breach of Contract (Count I)

Plaintiff's first claim is a breach of contract claim. Defendant argues Plaintiff's breach of contract claim should be dismissed because the policy at issue had lapsed and was no longer in effect, meaning Plaintiff failed to state a claim for breach of contract. (ECF No. 9, PageID.63.) Under Michigan law, the plaintiff must prove: "(1) the existence of a contract; (2) a breach of that contract; and (3) damages suffered by the nonbreaching party as a result of the breach." *Lossia v. Flagstar Bancorp, Inc.*, 895 F.3d 423, 428 (6th Cir. 2018) (citing *Miller-Davis Co. v. Ahrens Const., Inc.*, 817 N.W.2d 609, 619 (Mich. Ct. App. 2012)). "'To plead a legally cognizable claim of breach of contract' under Michigan law, a plaintiff 'must first establish the existence of a valid contract between the parties.'" *Saline River Properties, LLC v. Johnson Controls, Inc.*, 823 F. Supp. 2d 670, 674 (E.D. Mich. 2011) (quoting *City of South Lyon v. Demaria Building Co.*, 2010 WL 334569, at *14 (Mich. Ct. App. Jan. 28, 2010)).

Defendant claims Plaintiff's breach of contract claim fails at the first element because the policy lapsed when Plaintiff failed to pay the $3,727.57 premium it owed by the May 7, 2022, due date, or the expiration of the 61-day grace period on July 8, 2022. (ECF No. 9, PageID.64-65.)

Plaintiff claims that Defendant breached the contract by failing to properly notify Plaintiff of the policy's impending lapse and termination as required under Mich. Comp. Laws §§ 500.4012(b) and 500.4037(g). (ECF No. 12, PageID.134.) Plaintiff makes two

arguments as to why Defendant's notice did not meet these statutory requirements. Plaintiff argues that both the language and the date of the arrival of the notice were legally insufficient to notify Plaintiff of any pending termination of the policy, meaning the lapse and termination of the policy were improper.

First, regarding the language of the notice, Plaintiff argues that the April 13 notice was "identical to many other reminder notices [it] received through the years. As a result, [it] could not have recognized the Reminder Notice as anything more than a normal quarterly statement." (ECF No. 12, PageID.136.) Further, Plaintiff argues the notice did not properly notify Plaintiff of any impending termination of the policy or of a 61-day grace period, as required under §§ 500.4012(b) and 500.4037(g). (ECF No. 12, PageID.135.)

Second, Plaintiff argues that because the notice was not received until July 2022, it had "the right to assume that the April 13 Reminder Notice applied to the second quarter of 2022 and that the May 'please pay' date was not notice that the policy was in jeopardy." (ECF No. 12, PageID.136.)

The Court finds Plaintiff's arguments to be without merit. The statutes Plaintiff claims Defendant violated state:

> Each life insurance policy shall contain the following provisions:
>
> …
>
> (b) That written notice shall be sent by the insurer to the policyowner's last known address at least 30 days prior to termination of coverage. This subdivision does not apply to an insurer that collects a majority of its annual premium in person.

§ 500.4012(b).

> Each universal life insurance policy shall contain all of the following provisions:
>
> …
>
> (g) That written notice shall be sent by the insurer to the policyowner's last known address at least 30 days prior to termination of coverage. A flexible premium universal life insurance policy shall provide for a grace period of at least 30 days after lapse with lapse occurring on that date on which the net cash surrender value first equals zero or as otherwise defined in the policy.

§ 500.4037(g).

In other words, these statutes only require (1) that written notice must be sent to the policy owner's last known address at least 30 days prior to the termination of coverage, and (2) must provide for a grace period of at least 30 days. §§ 500.4012(b) or 500.4037(g). Neither section has any requirements for the specific language such notice must contain.

Here, the notice states when the payment is due, the amount owed, and that failure to pay could result in the termination of the policy. (ECF No.10-2, PageID.106.) Further, Defendant provided a grace period of more than the 30-days. (ECF No. 10-5, PageID.120; ECF No. 10-6, PageID.122.) The policy did not lapse until July 8, 2022—a full 61-days after the May 7, 2022, due date stated in the notice. (ECF No. 10-2, PageID.106; ECF No. 10-5, PageID.120; ECF No. 10-6, PageID.122.) This is well beyond the statutorily required 30 days. §§ 500.4012(b) and 500.4037(g).

Nor is the date of arrival of the notice relevant under §§ 500.4012(b) or 500.4037(g). The statutes require that the notice is *sent to*—not received by—the insurer's last known address at least 30 days prior to the termination of coverage (§

500.4012(b) and § 500.4037(g)) and must provide for a grace period of at least 30 days. § 500.4037(g).

Plaintiff also makes no claim that Defendant sent the notice to the wrong address, or that the notice was not sent at least 30 days prior to the termination of the coverage. In fact, the parties agree that the notice at issue was dated April 13, 2022, with a payment date of May 7, 2022. (ECF No. 9, PageID.60; ECF No. 12, PageID.136.) Instead, Plaintiff makes conflicting claims as to when it received the April 13, 2022, notice. In its Complaint, Plaintiff claims it did not receive the notice until May 2022. (ECF No. 1, PageID.3.) However, in its response to the motion to dismiss, Plaintiff changes the date it received this notice to "after the July 4, 2022[,] holiday."[2] (ECF No. 12, PageID.131; ECF No. 12-3, PageID.167.) Even assuming the later date of receipt is true, Plaintiff knew based on the information in the April 13, 2022, notice that its payment was late, and did not send the check—dated July 5, 2022 (ECF No.10-3, PageID.115)—until July 11, 2022. (ECF No. 10-3, PageID.109). The payment did not arrive until July 12, 2022. (*Id.*) Plaintiff provides no explanation for why it waited those six days to send the payment.

Regardless of which date Plaintiff received Defendant's notice, the notice itself met all the statutory requirements. Moreover, at least one Michigan court has noted that § 500.4012 "does not indicate any consequence for failing to include the mandated provision in a policy or for an insurer's failure to actually send written notice to the policyowner 30 days before terminating the policy." *Kolk v. Household Fin. Corp. III*, 2018 WL 521803, at *8 (Mich. Ct. App. Jan. 23, 2018). In that case, the court found that the

---

[2] While Plaintiff describes this notice as an "invoice" in its Complaint (ECF No. 1, PageID.3), and as a "reminder notice" in its response to defendant's motion to dismiss (ECF No. 12, PageID.136), it appears both the "invoice" and the "reminder notice" are referring to the same April 13, 2022, document from Defendant.

decedent's failure to pay insurance premiums was a sufficient reason warranting termination of the insurance policy irrespective of any violation of the notice requirement. *See id.* at *8-9. Here, Plaintiff concedes that it did not make the last two quarterly payments in 2022. Because the underlying policy was terminated prior to Mr. Becker's death, Plaintiff has failed to state a claim for breach of contract. The Court therefore finds dismissal of Plaintiff's breach of contract claim (Count I) appropriate.

### B. Unfair Trade Practice/Bad Faith Refusal to Pay Benefits (Count II)

Next, Defendant argues Plaintiff's unfair trade practice/bad faith refusal to pay benefits claim should be dismissed because the policy had lapsed before Rudolf Becker died, meaning Plaintiff is not entitled to any benefit under the policy or to any subsequent interest claims.

Michigan law requires valid insurance claims be paid on time and imposes penalty interest on late payments. Mich. Comp. Laws Ann. § 500.2006(1), (4). However, § 500.2006(1) states that the insured must be "directly entitled to benefits under its insured's insurance contract." § 500.2006. In other words, a valid contract must exist to fall within this statute.

The Court determined above that Plaintiff failed to state a claim for a breach of contract because the policy had already lapsed and been terminated. As such, the Court finds Plaintiff has no basis for a claim under §§ 500.2006(1) or (4) and finds dismissal of Plaintiff's unfair trade practice/bad faith refusal to pay benefits claim (Count II) appropriate.

### C. Breach of Contract Implied in Law (Count III)

Finally, Defendant argues Plaintiff's breach of contract implied in law claim should be dismissed because Plaintiff concedes that the policy is a contract and fails to allege the elements required for an implied contract claim.

Under Michigan law, the elements of unjust enrichment are: "(1) receipt of a benefit by the defendant from the plaintiff and, (2) which benefit it is inequitable that the defendant retain." *Dumas v. Auto Club Ins. Ass'n*, 473 N.W.2d 652, 663 (Mich. 1991); *see also Martin v. E. Lansing Sch. Dist.*, 483 N.W.2d 656, 661 (Mich. Ct. App. 1992). "[A] contract will be implied only if there is no express contract." *Martin*, 483 N.W.2d at 661. However, pleading both express contract and implied contract claims is permissible when there is a dispute between the parties as to whether an express agreement exists. *Bowlers' Alley, Inc. v. Cincinnati Ins. Co.*, 32 F. Supp. 3d 824, 833-34 (E.D. Mich. 2014).

Here, the parties agree that there was an express contract that governed their relationship. Moreover, Plaintiff does not state any inequitable benefit Defendant received from Plaintiff following the termination of the policy. Absent any such claim, Plaintiff fails to state a claim for a breach of contract implied in law. The Court therefore finds dismissal of this claim appropriate as well.

## IV.   Conclusion

For the foregoing reasons, Defendant's motion to dismiss Counts I, II, and III of Plaintiff's complaint is GRANTED.

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: December 6, 2023

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 6, 2023, by electronic and/or ordinary mail.

<u>s/Lisa Bartlett</u><br>
Case Manager